We'll hear first from Mr. Harris, is that correct? Certainly. May it please the Court? Good morning. Before I go any further, I just want to thank the Court for allowing us to be here today. We appreciate that. If you're hearing this case, obviously this case presents a very important, fundamental issue, which is whether we have a system in this country where we're going to give somebody advanced notice and allow them to show up at the hearing before we put their rights at issue. And that certainly was a big failure in this case on the part of the government. Mr. Ramos-Portillo entered the country as an alien for the first time, came here to seek asylum, does not speak English. With those background facts, I think that's very important. He stayed here for 20 years, right? That's correct, Your Honor. He stayed here for 20 years as an illegal agent, as an illegal entry. He did enter illegally, and for most of the time he's been here up to this point today, he's had temporary protected status as a Salvadoran. The first issue, if I may, I just want to talk about, and I think it's very important, is the issue of what the statute means. And the statute I'm talking about is the INA, and it's the statute that requires an alien in this case to provide the government with an address where he can be reached regarding his deportation proceedings. Back in 1993, when Mr. Ramos-Portillo entered, he provided the INS with the only address he had, which was his Salvadoran address. It was not an address, was it? It was an address, Your Honor. I thought it was just a town or village or something. I didn't know that it had any—I thought it was a totally inadequate address for him to receive mail or otherwise. Well, Your Honor, according to Mr. Ramos-Portillo, and it's my understanding, too, is back at that time in El Salvador, this is a small village called Acanton, and it's Canton, Papalonia, San Miguel, El Salvador is the address he gave. They didn't have street addresses, and he gave that to them, and he alerted his family. And it's his affidavit testimony that's in the record here that any mail that would have been sent there to that small village, everybody knew everybody, and it would have gotten to his family, and he didn't have a street address. Counsel, don't we have to, though, defer to the BIA's determination that it was not actually an address with a street number where someone could be reached? You know, if they have a factual dispute and your client says, this is my address where I can be reached, and it's an adequate address because it doesn't need a house number, and then the BIA determines that it is not an adequate address because it doesn't have a house number, isn't that, we can't go behind the BIA and say you're factually wrong on that, can we? Well, Your Honor, it's my understanding the BIA has no authority to make a factual determination. Well, or if they get it from the IJ, they can review the IJ who said that it's not a valid address, and they explain that it's not a valid address. Well, Your Honor, I would say back to the immigration judge who first issued the deportation order, there was no basis in the record for him to determine whether that was a valid address. Let me ask you, on the address, it had his name. Is that his name and the General Brogg address? Did it have an individual citizen or relative that was in that village, as you say? Or did it just give the village one that he had left? It would have gone to the Ramos Portillo family. It's two names that they would have known in the village where that piece of mail would have to go to. In other words, he gave his name, and he had a general address in the village. How big is the village? Your Honor, I honestly don't know the population of that village at the time, but I do know Canton, by definition, is a very small village, and according to Mr. Ramos Portillo, that would have been there. Well, his family was there, Your Honor. And they would have delivered a letter to him, to his family. That's the address he gave. How do we know if his family would have gotten it? We don't. It was the only address he had at the time. I agree with that. I mean, that's the problem. It didn't happen. He definitely gave that to the INS, and they did not put it on the documents that they were required to put it on. So between July and November, he didn't establish any kind of address in the United States? That's correct, Your Honor. The whole entire time between July and November? That's correct. He was working different jobs and going from place to place, and he kept in contact with his family during that time. He kept in contact with the government to say, I'm moving here to take this job, and I'm going to be at this place taking this job for four or five, because every five days, even if he's on the move, he's supposed to update where he is. That's right. And his permanent address never changed. His address, I should say, under the statute, which requires a given address, to give the government an address where he can be reached regarding deportation. Contacted is the right word, right? Contacted. Pardon me? Under the statute, the word is contacted? That's correct. The statute requires him to give an address where he can be contacted regarding deportation proceedings at the time. Now, but contacted has been elaborated on, and that contacted means for purposes of service, so that you can be personally served or served by certified mail. That's correct. At the time, certified mail. Right? Could you be served by certified mail in this village at the time? Well, mail that would have gone to the village would have been addressed to him. But would it have been certified, where you would have gotten a signature, and do they have that? Was there even a mechanism for, quote, certified mail? I'll spot you it's equivalent at that time. I know the U.S. Postal Service does send international mail all the time. But it's not certified mail, is it? I honestly can't answer that question, but what I would say is very important here, extremely important, the government never even made an attempt, period. And the government couldn't serve him personally there, right? Well, that's correct. They let him go on his own recognizance, and he had given an address, and it was an El Salvador address. Right, because contact. No, but I mean, they'd have to get permission from the Hague Convention or something if they want to serve somebody personally in El Salvador. You can't personally serve people in foreign countries, can you, in a lawsuit? I don't know the answer. My impression would be that it would be impractical for the government to serve him personally, but it did have an address. But it didn't have a certified. But the way that the government contacts people is by personal service or certified mail is the method of contact under the regulation, correct? At that time, yes, certified mail was in the statute. Yeah, it was in the statute itself. That's the method of contact, is certified mail. And there's no evidence in this record that you could be certified mail at this particular address, even if the address itself was okay. Well, with all due respect, Your Honor, there's no evidence in the record that it wouldn't have gone there. It did say, Judge Elrod has alluded to before, the record shows that he was specifically said, told, in his own language, you are required by law to provide immediately, in writing, an address and telephone number where you can be contacted. You are required to provide written notice within five days of any change in your address or telephone number to the office of the immigration judge who listed in this notice. That's correct, Your Honor. So did he ever do that? He absolutely satisfied the terms of that requirement. And the reason I say that, he provided the address to the INS, which at the time was under- He said no change. And within five days, you have a change of address. So he never changed his address? He never had a change of address during that time period. And so that's, the admonitions that were given him in the order to show cause that he was personally served with, he satisfied all of those. If he got a change of address, you got to let the immigration court know that doesn't apply because he didn't have one. And he did provide an address to- He had the address of his employer, whomever he was employed by. Well, the fact of the matter is, when he arrived on July 30th of 93, he was immediately put in deportation proceedings and given that document that gave him those advisals. And on that day, he just gets here, he's got one address, and that's the only one he was able to get. Right, but that's not where he could be contacted. He could not be personally contacted at that address or served by certified mail. Well, Your Honor, I think- After that point. The only evidence in this case is his affidavit on that issue, and it says mail would have gotten to his family, and he kept in contact with them. So he could have been contacted there. That's- Not on the means that the U.S. government used during the relevant time period to contact people, which were personally or certified mail. Well, mail- All of this is circular because, I mean, you're saying that he could have been contacted in his native country when he had no contact information in the United States. So there was no way for him to be contacted. You said he had no method or means of being contacted in the United States. He had no address. He had no telephone number. All he gave is the address in Guatemala. Is that where he was, Guatemala? El Salvador? Your Honor, that's- But anyway, I mean, how was his family going to contact him if he had no contact information? He had no phone. He had no residence. He had no address for his employer. He was just drifting. There was no way to contact him. He contacted his family every week, and that's in his affidavit. And you make a good point, Your Honor, about when somebody comes into this country, it's not uncommon at all that they have one address, and that's where they came from. And I think the significant issue in this case really is looking at the statute that requires- That argument might have some purchase, as some writing judges say, but except for the fact that he had 20 years to make the contact, and he never made it. Well, first of all, I would say about that, Your Honor, in response is that the deportation hearing was conducted in November, just months after he arrived. He never had notice of the hearing. He also never got a copy of the judge's deportation order, because that was never sent to him. So he didn't know what had happened, and- But he never made inquiry for years and years and years and years. That's correct. So he never- I mean, he got a piece of paper when he came in, and then he never followed up on it. He didn't, Your Honor. He relied on the government's assurances to him, written and oral. If you look at the order to show cause, it says, we're going to send you notice of your hearing to the address you provide. Is it your position that even for the lengthy years, not just the six months, not just July to November or whenever it is, but that for the entire time that he lived in the United States? It's not our position. Our position is, at the time that the government was required to give him notice of the hearing and send him a copy of the deportation order, he had the one address, and that's the one- But he didn't know, allegedly, that he had been given a deportation order in absentia. That's correct. So he would still be under that original duty that said he, every five days, he's supposed to contact them if he's moved. So, at some point, within, since 1993 to 2016, that obligation would realistically be triggered. Wouldn't it? Well, the obligation that I think you're talking about is the one that says he's supposed to, he's required to provide a change of address within five days of his receipt of that order to show cause, which was on July 31st. So, within five days of that, his address never changed, and he- It was a continuing obligation when he moved. So, you're saying that his, that he never, ever got an obligation to provide an address where he could be contacted. Well, Your Honor- And he maintained that that was his home, even though he'd been in the United States for this many years of his life. Well, Your Honor, what I would say about that is the order to show cause outlined all of his rights and obligations with respect to his address, and he satisfied all of those. I mean, your argument is, I mean, your best argument, I mean, is, I guess it's statutorily. It's a statute. It says all you have to do is provide an address that doesn't say anything other than that, and that you provided an address. And the question is whether that was adequate under the statute, and what the BIA did was adequate given the specific language of the statute. And I agree with that, Your Honor. If you look at the statute and you look at the plain language of that statute, it says provide an address where you can be reached. It doesn't say a U.S. address. It doesn't say a foreign address won't work. It just says where you can be contacted. That's correct. And every step of the way here, the INS, both immigration judges, the BIA, all the way up to this point has gotten it wrong and somehow read into that statute the requirement that a U.S. address has to be provided. And I think it's super important here to look at that order to show cause and see where the government was supposed to put his address they put did not provide a U.S. address. And then you get to the hearing, the first hearing in front of that immigration judge, and he has one piece of evidence in front of him. It's an I-213 that had Mr. Ramos-Portillo's address on it. It said residence. It does not say address, and it doesn't have a number. I'm sorry, Your Honor? The form says residence, not address. And it doesn't have a number. Well, he didn't have a number to give, and he gave the address that he says in affidavit testimony would have gotten his address. They didn't have the affidavit. You were saying they had what they had in front of them. They had the I-213 that the INS provided to the immigration court. Which lists his residence in the other country. Is he incarcerated now? No, Your Honor. He has had temporary protected status for many, many years from El Salvador. What do you mean protected status? Well, TPS is something he applied for and was given, which allows him to stay in the country. So he's been here most of this time with that status. So he has been legally here, you said? That's correct. He has had that TPS status for a couple of decades now. Why isn't it still viable? I mean, why is he in these proceedings today if he is a legal resident? Your Honor, it's significant to say, I'll point out to the court here, that TPS is just about to run out, just about to run out from El Salvador. So in about a year or so. Yeah, if he doesn't get this reopening, he's going to get deported in some process. Unless he has some other form of relief that he can ask for. That's the whole point here, too, is because without the ability to show up at his hearing, he has no opportunity to ask for relief. He's been here a long time now, and there are different avenues of relief that he may have, but he was never, for example, asylum. He was denied the ability to ask for asylum, which was his whole intent. You have to ask for asylum within a year of your arrival here. Right, but he didn't rush off to the immigration office and try to claim asylum. He stayed back and waited for them to find him. So it's not that they, he could have. He applied for TPS, and he got that. Every couple years he renewed that. But he could have applied for asylum. There was nothing that prevented him from asylum. That would have been at his hearing. But he could have, even on his own, when he came in, originally started this asylum process. If he knew about that year limitation. Let me ask, was the situation in San Salvador in the turmoil that it is today? Your Honor, it's my understanding that the gangs are still active there, and it's still a dangerous place to be. It was the same situation when he came into the country. Absolutely, and that's how he qualified for TPS. How long was he here before he got the protected asylum? I believe he got it within a year or so after getting here, but I'm not, don't hold me to that. I'm not 100 percent sure, but he got it pretty quickly. Counsel, why isn't the discussion we're having entirely academic? Because under our case law, our binding case law, we cannot give you, we cannot order you to be reopened because there's no due process violation under our binding precedent. So you can't, your due process claim fails. Well, Your Honor, I would say that the case law out of the Fifth Circuit that I've seen in 2017 and before, the case law that's relied upon by the respondent here is on different footing. You know, two of those cases, let me just tell you real quickly here, two of those cases, the Gomez-Palacios v. Holder, Lopez-Dubon v. Holder, those are cases in which the alien provided an address and then moved, changed the address, but never kept, apprised anybody of his change in address. Hernandez-Castillo says even if they had given, that you could excuse that address situation, that there is no liberty interest at stake in a motion to reopen due to the discretionary nature of the relief, regardless of whether the person would be triumphant on their technical argument about notice. If they were actually. Hernandez-Castillo, that individual did not provide an address. I mean, as I understand, there are certain provisions, I'm not quite sure what they are, in the law that would provide for a reopening right by statute, and that would not be subject to a due process claim. That's absolutely true, Your Honor, and there's a statutory basis for it. And if they don't receive notice, they have a right to have it reopened. That's correct, and there's no limit to that. That's a statutory right and not a due process right. Absolutely, and that's what we're saying here. He's got a statutory right to that. Thank you very much. Good morning, Your Honors. Does he have a statutory right to reopening? Your Honor, reopening is a discretionary matter. That's been a well-settled law, and so this court's review is simply of the board's discretionary decision, and if it was an abuse of discretion, then the court could make its determination. But in this case, the board did not abuse its discretion. But what if the board incorrectly interpreted the address requirement? We don't review that for abuse of discretion, do we? I would argue the board did not incorrectly interpret the address requirement. The board made it quite clear that this petitioner did not meet his notice requirements under the regulation and under the statute, as did the immigration judge, and that was the dispositive issue in this case. Right, but under what standard do we review the board's interpretation of a statutory provision? We review it de novo, correct, whether they got it right or wrong? That's correct, but in this case, the board made a determination that this petitioner, based on the record and based on the immigration judge's determinations, did not provide immediately in writing his address to the immigration court. Regardless of petitioner's arguments that he provided an address to the form I-213, which is a record of deportability, that form has nothing to do with the order to show cause and the instructions that are attached to the order to show cause. Now, we don't review it de novo, do we? We review whether it was irrational or nonsensical. We have a whole litany of these words. The entire thing wrapped up in a bow, which includes the legal determinations that went into it. We don't separately look at the law. We look at the entire process to decide if it was abuse of discretion. That's correct. This court, in reviewing the board's decision, is a discretionary. We're not reviewing the board de novo, even on the law. Right, the board itself is reviewing the immigration judge's legal issues de novo, but this court, and I apologize for that confusion, this court is reviewing under an abuse of discretion standard as a whole. But does the IJ or the BIA have discretion to misinterpret a statute? Certainly, agencies have been known to misinterpret statutes. How should we review the IJ or the BIA's interpretation of the statute? Well, the board, I believe the exact language of this court is that so long as the board's decision is not capricious or utterly without foundation in the evidence or otherwise is irrational, that it is arbitrary, rather than the result of any perceptible rational approach, then this court must affirm the board's decision. That's the standard in this case. Is this statute ambiguous on what the address requirement is? Are you referring to 8 U.S.C. 1252B, the deportation? Yes. Is it ambiguous on the geographic requirement? It does not provide specifically explicitly a U.S. address under Section A1F. However, it does provide under Section C1, which is the consequences of the failure to appear, it does say that written notice must be considered sufficient if provided at the most recent address provided under this subsection. The address in El Salvador, as Your Honor referred to, is a residence, and on that Form I-213 that he asserts he gave his El Salvador address, there's actually two sections. There's a U.S. address, and then there's the country of residence. That U.S. address section was left blank, again, because he asserts that he did not have a U.S. address. Does anything in 1252B prohibit an alien from providing a foreign address to be contacted? I don't believe there's an explicit preclusion of that foreign address, but that's not the issue here. The government's position is not that in every provision of the INA or in this case that the foreign address is the issue. That's not the issue. Petitioner didn't even meet his initial hurdle. That initial hurdle is to provide immediately in writing an address where he can be contacted, and if he has a change in address, then he must provide that form. That implies that the immigration court understands that this is an entrant who has recently come into the U.S. They may not have an address right at the moment that the order to show cause is served, but the anticipation is that they are staying in the United States, seeking asylum or other forms of relief, and will soon have an address in which to provide to the immigration court. Opposing counsel says he never changed his address. Well, that seems like an unlikely argument, Your Honor, quite frankly. If someone is living here for 23 years, there is a mailing address that can be provided to this court, and as Your Honor noted, it is a continuing obligation. The order to show cause instructions do not say, please provide your permanent address, the safest place that you can receive mail that your family will communicate with you. It says without, in very black and white terms, you must immediately provide an address. Additionally, the board has discussed the fact that it's incumbent upon the petitioner to What do you say about the argument about the address they did furnish? Is that an adequate address to reach this individual who is in the United States and cannot be served in the local community, but someone will hear there's a letter out there somewhere floating around that has his name on it? There's two issues there. First is the manner in which he provided that El Salvador address does not comply with the instructions provided in the order to show cause. In what way? The order to show cause is the document which provides the advisals and warnings to the petitioner. The form I-213, in which a border patrol completes it while discussing with the petitioner, that form does not provide any instructions or advisals or warnings. It's simply a biographical form, a business record, in which to get some information about the petitioner. It's the order to show cause and the resulting address that's provided either on the order to show cause or subsequent to that order being served. That's the important point at which an address needs to be provided. Yeah, but what did you hope to accomplish in this even request for his address? I mean, you knew it was reasonable to assume that the vast majority of these people have no address by which they can be contacted at the time that they appear in before the immigration authorities. So how do you turn them loose without any kind of address and think they're going to come back and furnish an address to you so you can contact them to come back in and try to make a claim for deportation when they're going to be deported immediately? They're trying to stay away from you. Yes, Your Honor. I believe the Form I-213 specifies that the detention space was low, the resources were low. And back in 1993, the policy was that even if they didn't provide an address in which a notice of hearing could be sent to them, these warnings were given in English and in Spanish. It was a four-page document to explain to them that the U.S. government would be anticipating this address would be mailed. The INS never made an effort to contact him at his Salvador address. But the issue is certified mail, as Your Honor pointed out. There are regulations that require a return receipt. And as the Board has stated, there is a presumption of effective delivery of service with certified mail. That's why it's used. The court understands the U.S. Postal Service. But you didn't mail it certified. You didn't even try the address that he gave you. The address, that's the crux of this issue, Your Honor, is that the address was never provided. And it was certainly not provided. It did provide an address of some sort. To the Border Patrol agent filling out a form that had nothing to do with the order to show cause. The order to show cause is the legal document that he's provided, and he is told to keep it with him and keep a copy with him and to understand the warnings and instructions. Was there an address provided on that? No. And he could have, after receiving that order to show cause, then sent written notice to the immigration court stating, this is the only address, my El Salvador address, that's the only one I can receive mail at. But that's a different case. That's not the case before this court today. So to tee up this interesting argument that we want to have about whether you can provide a foreign address and then whether the government has a duty to contact you at that, the argument that purports to be the argument that we would have, in order to tee that up, he would have had to have given that in answer to the proper form. And he didn't even tee up the argument because he didn't give that on the proper form. He just told the border agent who put it on the country of origin residence blank. And he never updated as well, Your Honor, that change of address form. So we are not, we don't even have the proper beautiful case in front of us to decide if the statute is truly ambiguous or allows for a U.S. address, I mean a foreign address. That's correct. And in our brief we state that we are not asking this court to reach the foreign address argument because the crux of this case, the dispositive issue in this case, is that initial burden that the petitioner failed to comply with entirely. And essentially he did wash his hands of any active participation in the immigration proceeding for two decades thereafter. The immigration authorities want this case remanded so they can clarify some of the issues that have been raised in this appeal and in this proceeding. That is actually in my co-worker's case, my colleague's case. That's not this case. That's not this case. You don't want, what relief do you, what should happen in this case? In this case the petition for review should be denied, Your Honor. And in regards to the petitioner's TPS status, I would just clarify for the court that TPS is a temporary protected status. It does not present a legal binding status for this petitioner. It can be revoked at any time and it is set to be revoked in 2019. So it's one of those discretionary ones that doesn't create any rights or property interests or whatever in that status. That's my understanding. Okay. And these proceedings can still proceed forward regardless of the TPS status. Can you do me a favor and just rewind about two minutes because I find this fascinating. So can you describe this mechanically, procedurally, paperwork-wise, mechanically describe for me the manner in which opposing counsel's client provided the address but not in a compliant way, not in a way that complied with the requirements. I just want to make sure I understand this and the posture of it all and whether this is or is not teed up to be the case that we thought it was. Yes, Your Honor. In the record on page 76 of the administrative record, that's the record of deportable alien. That's the biographical record that the Border Patrol agent creates stating that this individual entered on a particular day through Laredo, Texas, I believe it says, at the date and time of the document, who he encountered, the fact that he's a native of El Salvador, that he is deportable via an old INA provision, and that he was provided a change of address form and a list of attorneys to this petitioner. And at that point, at the top of the document, it does state, number, street, city, province, and country of permanent residence, Canton, Pamplona. And what's the name of that document or the form number? This is the I-213. This is the preliminary document that is most often, it's my understanding, as I've seen it in these cases, completed upon the entry or incident encounter. And that's the one and only document upon which an address is provided. In this record, it's the one place where he did provide his country of origin address. That's correct. And there is no other evidence in the record indicating that he provided a U.S. address at any time. But that is not sufficient, if I follow you correctly, in connection with the order to show cause. Correct. The order to show cause under Regulation 3.15, which is an old regulation that's been updated, but back in 1993, under C-1, it says, if the alien's address is not provided on the order to show cause, or if that address is incorrect, the alien must provide to the Office of the Immigration Judge, where the order to show cause has been filed, within five days of service, a written notice of an address and telephone number at which the alien can be contacted. So the regulation makes clear that it's the order to show cause that is the integral document for the Immigration Court. And it also provides in that regulation that there's a specific change of address form, Form EOR-33, which is the same address form that's provided to the petitioner, as indicated in the record on page 88, when he was released from INS custody. So he's given ample notice that this is an important change of address document. He's given ample notice that the Immigration Court is waiting for his information. But it has nothing, that the form has a blank, right? The show cause order has a blank for address. The show cause order says, did not provide the U.S. address. And the show cause order, to be clear, is in both English and Spanish. In fact, the word address is listed in English and Spanish, and next to the word address is that line that says, did not provide a United States address. Where is the statutory or regulatory authority that requires a United States address? The statute 1252B, again, refers to an address. It does not, the regulations in the statute do not choose between a foreign and a U.S. address. But again, that issue is not, we are not asking this court to reach that issue here today, because the more dispositive issue is the fact that Petitioner didn't comply with the order to show cause. The form has no address on it, correct? There is no address. There is no address. And when the show cause has no address on it, foreign, domestic, whatever, the instruction is that you have to provide an address. Correct. In your own language, you're told that. Correct. Again, it's not the government's position that a foreign address is not allowed. Forgive this rudimentary question. I'm new around here. But on the order to show cause, the address box or line, is that filled in based on what the alien provided to the Border Patrol agent? How is that box filled in? Who fills that in and based on what? It's my understanding that, just a moment, Your Honor. Because it says did not provide U.S. address, but how is that provision? If the Border Patrol agent is provided an address that is then transcribed, I'm not entirely sure how, but if it is transcribed on the order to show cause, that would be a different story. But is it typically taken from the Border Patrol administrative record document? Is that where that order to show cause address is typically drawn from? I believe the regulation says the service shall provide the following information to the Executive Office of Immigration Review, and the address is one of them if an address is provided that the court, I'm not exactly sure the procedure, but if that address is there, it might be transcribed on there. I don't know, I don't have a guarantee for Your Honor or regulation that says it will for certain be transcribed. But for whatever reason it wasn't. For whatever reason it wasn't. But it also says in the regulation, omission of any of these items shall not provide the alien with any substantive or procedural rights, and the address is listed as one of those items, which is why it's made very clear to the petitioner if it is missing from this order to show cause, which might happen, either because the Border Patrol agent did not put it or the petitioner did not provide it, there is this backup plan, these instructions, which give the petitioner an opportunity in case there was an error in transcribing that address from the Border Patrol agent to the order to show cause. The petitioner is given that opportunity to give a written record to the immigration court to provide a correct address. Because at the end of the day, even if there's an error on the order to show cause, the petitioner still has an obligation to provide a written correction of that error or a written change of any change of address. Again, there's a continuing obligation here, and absolutely nothing was done in this case. That's the main problem here. Is the continuing obligation reflected in the adopted regulations of the INS, or is this just a work rule that has evolved over the years? No, in Regulation 3.15c.2, it says, Within five working days of any change of address, the alien must provide written notice of that change of address to the office of immigration judge. It's clear as day that this is an obligation that does not just end. There are addresses that are changed all the time, and there's case law in this court in which if an address is provided and certified mail is not able to be delivered and petitioner never provided a change of address, then the board did not abuse its discretion in denying that motion to reopen. I believe Gomez Palacios had similar circumstances in which he provided initial address, but the second address that he provided was not an address that certified mail could be delivered to, and the return receipt said undeliverable. And at that point, he never changed his address in nine years or four years. This case? Gomez Palacios' case in this circuit. And the Hernandez Castillo case is exactly the same, in which the petitioner actually never provided an address, was told in the notice to appear in English and in Spanish what his obligations were, and many years later asked for the case to be reopened. But the court stated that the petitioner did not fulfill his initial obligations to provide an address, and he cannot therefore come to this court asking to reopen the case when he did not provide any information. Didn't we say, though, in Hernandez Castillo that even if he didn't have any obligation whatsoever, it was discretionary, and so he couldn't get us to order a reopening anyway? It says, even assuming arguendo, that he didn't have any duty and he could establish he was eligible, he couldn't establish due process because there's no liberty interest. That's correct, Your Honor. So he doesn't get reopening anyway? Yes, that's correct. There is no liberty interest here. The regulations state that any omissions on the order to show cause do not provide a substantial due process argument. So I would argue, and I believe my time is up, but I would agree with Your Honor on that point. I'm willing to take further questions if Your Honor is— I think we have your argument, and you've saved time for rebuttal, Counsel, so you don't wish to make a rebuttal at this time. Is that correct? Sir? Okay, I apologize. Well, thank you for your candor. Certainly, sir. He has a question for you. Thank you, Your Honor. Thank you. So you may answer Judge Willard's question. The opposing counsel says, yes, your client provided an address to the Border Patrol agent on the I-213, this preliminary document, but your client did not provide an address in connection with the order to show cause, and the order to show cause is the integral document for the immigration court. I just wanted to know what you had, if anything, in response to all that. Absolutely. I do have a response to that. I will say the order to show cause, just to start with, it has a bunch of advisals in Spanish and English, and it says these are all of your obligations. Nowhere is it listed on that order to show cause in those advisals that he's supposed to look at that document and make sure his address is in there. It doesn't require that. The regulations require the government to put his address on there that was given to them. Given to them at the crossing before the Border Patrol agent? Given to them to whom and when? Well, what it says is the statute says he's supposed to provide an address to the Attorney General. INS was under that authority then. And the order to show cause says we're going to give you notice of your hearing through the address you provided in past tense, and he provided an address. That's my response to that. All right. Thank you. Thank you. We have your argument. This case is submitted.